ABRAM SAWYER *v.* THOMAS WILLIAMS.

*School Districts. Organization. Taxes.*

The geographical limits of a school district must be defined by the inhabitants of the town, at a legal meeting warned for that purpose, and unless so defined, the survey should not be recorded.

And where a town simply authorized a division of a school district, without defining the boundaries of the new district, *it was held* insufficient to show a legal division and organization of the new district, though the district voted to divide.

But where a division was in fact made and recorded, and the town afterwards recognized or ratified the same, *it was held*, that this was sufficient to render the division legal and binding upon the inhabitants of the town and district.

TRESPASS for taking a cow, &c. Plea, general issue, and notice that defendant will give in evidence, and rely upon the following facts, to wit: That plaintiff's property sued for, was taken and

sold in satisfaction of four several school district taxes, duly asses-sed by the inhabitants of school district No. 22, in Chester, and that said district was duly organized, &c. Trial by jury.

On the trial, it was conceded by the defendant, that the proper-ty sued for was taken by collector of said school district, in satis-faction of said taxes against the plaintiff, and that the defendant was prudential committee of said district—signed one of said tax bills, &c.

It was conceded by plaintiff, that he resided within the limits of said school district, No. 22, at the time of the voting and collection of said taxes, and that he had a grand list in said district, upon which said taxes might be legally assessed, in case said district was legally organized. That said taxes were voted and assessed at meetings of the inhabitants of said district, legally warned and holden for that purpose; and that all the provisions of the law, re-lating to the distraining and selling said property by the collector, were complied with.

- It was also conceded that the town of Chester, at their annual March meeting, upon an article in the warrant calling said meet-ing for that purpose, in the following words, viz: " *To see if the town will vote to divide the 20th school district,*" voted· as follows, viz: " *Voted, that the 20th school district be divided, in case said district pass a vote subsequently to this time to divide.*" That the vote and proceedings of said town of Chester were duly re-corded in the records of said town of Chester.

It was also further conceded, that on the fourth day of April, A. D. 1848, at a legal meeting of the inhabitants of said last named· district, called for that purpose, said district passed a vote to divide said school district, No. 20, as follows, to wit: " Beginning at the " north corner of Silas S. Sawyer's farm, and running southwest " on said Sawyer's north line, across the road and river; thence on " the south bank of said river, to the southeast corner of the bridge " crossing said river; thence southwest on the east side of said road " leading from Chester to Grafton, to John Brook's pasture, and to " Brook's northeast corner; thence on Abram Sawyer's west line " to the branch river; thence on the south and east line of district " No. 20, to the place of beginning." That said vote of said dis-trict was duly recorded in the records of said district No. 20, and

also, together with the above description of said new district, was recorded in the records of said town of Chester.

That said new district, on the 12th day of April, 1848, was, upon previous application to the selectmen of said town, after due notice to all concerned, duly organized as a school district in said Chester, and the proceedings of the selectmen in organizing said district, were recorded in due form of law in the records of said town of Chester.

That at the annual March meeting in 1849, of said town, an article was inserted in the warrant calling said meeting, to set off three persons residing in school district No. 10, in said Chester, with their real estate, to said district No. 22; and that said town, at said meeting, voted to set off said three persons and their real estate, from said district No. 10, to said district No. 22; and said persons have, ever since said vote, acted with said district No. 22.

That the selectmen of said town, in the division of its school fund among the several school districts in said Chester, in the spring of 1849, 1850, and 1851, divided to and paid over to said district No. 22, its proportion of said fund.

The County Court, December Term, 1852,—COLLAMER, J., presiding,—upon the foregoing facts, *pro forma*, instructed the jury that said district was not legally organized, and that plaintiff was entitled to recover of the defendant for the property sued for. The jury, in accordance with the instructions of the court, returned a verdict for plaintiff.

Exceptions by defendant.

*H. E. Stoughton* for defendant.

The only question arising in the case is, as to the legality of the proceedings of the town of Chester, in organizing the district.

The case finds that said school district No. 20, at a legal meeting called for that purpose, by a vote of said meeting, on the 4th day of April, 1848, defined the *geographical limits* of the new district, and that the vote, together with the boundaries of said new district, were duly recorded in the records of the town of Chester, and in the records of district No. 20. The case also finds that the proceedings of selectmen in organizing the district were also recorded, &c.

The town of Chester, at their annual March meeting, in 1849,

XXV. 21

agreeably to an article in the warrant calling said meeting, voted to set off from district No. 10, to district No. 22, three persons and their real estate; and in the distribution of the school money in the spring of 1849, 1850, and 1851, the selectmen divided to and paid over to said district No. 22, its proportion of said money. After these acts on the part of the town and its officers, the several taxes were assessed, for the payment of which the plaintiff's property was taken.

These acts of the town and its officers constitute a ratification of the doings of school district No. 20, and are binding upon all persons; and these acts occurred before any tax was voted by said district, of which the plaintiff complains.

The organization of the district has been, therefore, *recognized*, *adopted* and *ratified* by the town. *Pierce* v. *Carpenter*, 10 Vt. 480. *Alden* v. *Rounsville*, 7 Met. 218.

*L. Adams* for plaintiff.

The district was not legally organized, because its limits had never been defined by any vote of the town. The town at no time undertook to define the limits by a direct vote, neither did they delegate the power to define, and afterwards ratify the doings of the delegate. *Pierce* v. *Carpenter*, 10 Vt. 480. *Hewitt* v. *Miller*, 21 Vt. 402. *School District in Alton* v. *Gilman*, 3 N. H. 168.

There are only two methods of forming a legal district, one by strictly legal proceedings under the statute, the other by showing the exercise of corporate powers for a long period, from which a legal organization may be presumed. *Barnes* v. *Barnes*, 6 Vt. 388. *Sherwin* v. *Bugbee*, 16 Vt. 439.

The district had not been acting long enough, as a district, to warrant a presumption of its regular organization. *Thomas* v. *Gibson*, 11 Vt. 607.

The acts of town officers, in recognizing a void district, cannot render it a legal district. *Pratt et al.*, v. *Swanton*, 15 Vt. 147.

The opinion of the court was delivered by

ISHAM, J. The tax on which the plaintiff's property was taken must be considered as legal in all respects, unless, for the single objection now urged, it shall be found otherwise.

It is insisted, that there was no legal organization of school dis-

trict No. 22, in Chester, and that without such organization, no legal tax can be assessed. The vote of the town, in March, 1848, authorized a division of school district No. 20, provided a vote to that effect was passed by the district. A vote to that effect was passed on the 4th day of April, 1848, in pursuance of which, the district was divided by metes and bounds, its geographical limits defined, and the survey recorded in the records of the town of Chester and of the school district.

The statute requires the limits of every school district to be defined by the inhabitants of the town, at a legal meeting warned for that purpose, (Rev. Stat. Chap. 20, § 16,) and unless so defined, the survey should not be recorded. The vote of the town, in March, 1848, simply authorized a division of district No. 20, without defining the boundaries of the new district. That vote, therefore, as well as that of the district, in April afterwards, is not sufficient to show a legal division and organization of district No. 22. This was so held in the case of *Pierce* v. *Carpenter*, 10 Vt. 480. Yet when the division was in fact made and recorded, if it was afterwards recognized, approved, or ratified by the town, this will render it a legal division, and binding upon the inhabitants of the town and district. This principle was recognized in the case of *Pierce* v. *Carpenter*, above referred to, and also in *Alden* v. *Rounsville*, 7 Met. 219. This ratification of that division of the district, with its boundaries as recorded in the town clerk's office, is found in the vote of the town of Chester, on the 6th day of March, 1849, wherein Thomas C. Olcutt and two others, with their real estate, were set off from school district No. 10, to school district No. 22. From that time, the district, with its limits as surveyed and recorded, must be considered as fixed and ratified by the vote of the town.

The taxes all having been assessed after that ratification of the division of the district, must be considered as legally assessed.

The result is, that the judgment of the County Court must be reversed, and the case remanded.