WILLIAM S. WYLEY *v.* EDWIN WILSON.

*Town   Meeting.     Warning.     Alteration   of   School   Districts. Acquiescence.*

The notification for a town meeting must set forth the business to be acted upon, with such clearness and particularity, that the voters may not be misled in regard to such business, and must be broad enough in its terms to include the business actually done.

The following article in the notification: "To see if said town will accept and adopt the report of the committee to alter school districts," authorized the making such alterations as the committee recommended and no others.

The plaintiff, with others, under the foregoing article in the warning, was by vote set from school district No. 7 to school district No. 2, thus abolishing district No. 7, the same not having been recommended by the committee. The plaintiff and others protested against it, and did not thereafter recognize the validity of such transfer. But the plaintiff and others residing in district No. 7, after the March meeting in 1864, when said transfer was made, till 1868, paid their taxes in school district No. 2, when *requested* so to do by the collectors, and in 1868 attended the meeting of said school district No. 2, called to provide for building a school house, to resist a vote to build a school house. *Held* that there was not such an acquiescence in the unauthorized action of the town by the plaintiff as has made him a resident of that district.

Under an article in the warning for a town meeting in 1868, to set the plaintiff to district No. 3 in Wallingford, describing him as of district No. 2, the town voted to set the plaintiff to district No. 3 in Wallingford. *Held* that this constituted no such action on the part of the town as to bring the case within *Sawyer* v. *Williams*, 25 Vt., 311, and work the removal of the plaintiff from district No. 7 to district No. 2.

TRESPASS for taking four yearlings. The case was tried upon the following agreed statement of facts : For many years prior to

1864, there was a school district in Clarendon, numbered 7, in which district the plaintiff and his taxable property was situated.

Annually at its March meetings, prior to 1864, Clarendon appointed a committee designated as " the committee to alter school districts," whose business it was to hear applications and make reports thereon to the town meetings of any desired changes in school districts in said town. That such a committee was appointed by said town at its annual meeting in March, 1863; that during said year of 1863–4, application was made to said committee by Elias Stewart, Nathan J. Smith and Frederick Button, members of said school district No. 7, to be transferred to school district No. 2, in said town, and a hearing had before said committee upon said application, and report made thereon by said committee, recommending such transfer of said three persons, and none of the other members of said district No. 7 were mentioned in said application or report.

Said report was made to said annual meeting of said town, held in March, 1864. That in the warning for the annual town meeting of said Clarendon for 1864, one article was as follows:

" 7th. To see if said town will accept and adopt the report of the ' committee to alter school districts.' "

And another article in said warning was as follows:

" 8th. To do any other business thought proper when met."

And no other article in said warning touching or referring to said matter. That at said annual town meeting of said town it was " Voted to accept and adopt the report of the committee to alter school districts, setting Elias Stewart, Nathan J. Smith and Frederick Button to school district No. 2." And also voted at said meeting " to set the remainder of district No. 7 to No. 2," thus abolishing district No. 7.

That at said meeting the plaintiff and others of said district 7 protested against being thus set from No. 7 to No. 2 school district.

That from and after said March meeting of 1864 till 1868, the plaintiff and others of said district (with the single exception of a tenant upon one of the farms in said district 7, for one term of school) did not recognize the validity of said transfer by at-

tending school meetings in district 2, or sending them to school, but did send to school in a district in Wallingford. But the plaintiff and others of said district 7 during said period did pay their taxes in school district No. 2 when *required* so to do by collectors of said district. And, in 1868, and perhaps before that year, when meetings were called of school district No. 2, to provide for building a school-house in said district, members of said district 7 generally attended such school meetings, and the plaintiff was usually there till the vote of said town, April 8th, and participated in its proceedings. That on the 25th day of March, 1868, a town meeting of said Clarendon was duly warned to be holden on April 8, 1868, "To see if said town will vote to set off and annex to school district No. 3 in Wallingford" several persons and their grand list, including the plaintiff and his grand list. That on the 8th day of April, 1868, said town at its said meeting voted to set off and annex to said district 3 in Wallingford said several persons and their grand list, including the plaintiff and his grand list, when said several persons shall have been received by said district No. 3 in Wallingford. That on the 16th day of April, 1868, said school district No. 3 in Wallingford, at a legal meeting of said district duly warned and holden, "voted unanimously to accept and receive into said district No. 3, all the territory and inhabitants, together with their grand list, set off by the town of Clarendon, on the 8th day of April, 1868, to said district No. 3 in Wallingford;" and a proper copy of the records of said Wallingford district was duly recorded in said Clarendon town records, on the 17th of April, 1868, and in said Wallingford town records on the 27th day of April, 1868; and a proper copy of the records of said vote of said Clarendon, of said 8th day of April, 1868, was recorded in said Wallingford town records on the 27th day of April, 1868. That on the 27th day of March, 1868, a school meeting was duly warned of said district No. 2 in Clarendon, to be holden on the 4th day of April, 1868; among other things—

"1st. To see if the district will vote to build a school-house in said district."

"5th. To see if the district will vote to raise a tax on the

grand list of said district to defray the expenses of building said school-house," &c.

That at said meeting, on the 4th of April, 1868, said district voted that the said district build a new school-house, and said meeting was adjourned to the 11th day of April, 1868.

At which adjourned meeting said district " voted to raise a tax not to exceed $2,000 on the grand list of the district to build a new school-house."

It is agreed that the defendant was the legal collector of school district No. 2 in Clarendon, and had a rate-bill and warrant attached, all in due form ; said rate-bill was made out upon and for the collection of the tax voted as stated above ; in which rate-bill was a tax of $47.04 against the plaintiff, and upon which and said warrant the defendant seized the said four yearlings. That said defendant's fees and charges upon said warrant were $7.69, making, for tax and fees, $54.73. That the defendant sold said four yearlings together at one sale for $21.75 each, amounting to $87.00, and offered to pay back to the plaintiff the excess, $32.27, which the plaintiff declined to receive ; and the defendant brings the said excess here into court for the plaintiff.

The said cattle were bid off by an agent of and for the plaintiff.

It is conceded that the proceedings of the defendant were proper and justified, if the plaintiff was liable to said tax ; and if the defendant had the legal right to seize and sell all of said four yearlings, when a less number would have paid the said tax and his fees.

The court, at the September term, 1871, WHEELER, J., presiding, rendered judgment upon the foregoing agreed statement of facts, for the plaintiff to recover $87 damages and his costs. Exceptions by the defendant.

*Edgerton & Nicholson*, for the defendant.

The material question in this case is, Was the plaintiff an inhabitant of school district No. 2 in Clarendon, on the first of April, 1868 ? The notice for the annual March meeting of the town for that year was sufficiently definite to authorize the " *alteration of school districts.*" It sufficiently indicated the business to

be acted upon.  *Weeks* v. *Batchelder*, 41 Vt., 317 ; *Ovitt* v. *Chase*, 37 Vt., 196.  The vote of the town upon that subject was sufficient to " abolish district No. 7," and to add its territory to district No. 2.

After this change was made, the inhabitants of No. 7 acquiesced in it.  They did not keep up any organization, nor did they ever act, as a district.  They treated themselves as members of district No. 2, by the payment of taxes in that district, and by attending and participating in the proceedings of their meetings. And the plaintiff and some others more particularly recognized their membership of No. 2, by procuring and acting upon their set-off *from* No. 2 to the Wallingford district, in April, 1868. Should there be any doubt as to the efficacy of the vote of Clarendon " abolishing district No. 7," the subsequent action of the town, setting off the plaintiff and others *from district No.* 2 to the Wallingford district, was a sufficient recognition and ratification of that vote to give it validity.  *Sawyer* v. *Williams*, 25 Vt., 311.

*W. H. Smith*, for the plaintiff.

School district No. 7 was never " abolished."   The plaintiff never belonged to district 2.   The warning for town meeting for March, 1864, did not " set forth *any* business to be done " with district 7.    The business attempted was not *incident* to any the town was authorized to transact at said meeting under the said warning.  See Gen. Stats., 106, § 3 ;  *Moore* v. *Beattie*, 33 Vt., 221–2 ;  *Blush* v. *Colchester*, 39 Vt., 195.

Here is shown no such *acquiescence* in or ratification of said action of the town as to *commit* the plaintiff and others to the transfer to district 2.

The opinion of the court was delivered by

Ross, J.   The statute requires the business to be acted upon in town meeting to be set forth in the notification.   General Statutes, ch. 15, § 3.   The notification must do this with such clearness and particularity that the voters may not be misled in reference to the business upon which they will be called to act, and must be broad enough in its terms to include the business

actually done.   *Moore* v. *Beattie*, 33 Vt., 221 ; *Blush* v. *Colchester*, 39 Vt., 195.

The article in the notification, under which the town voted to set the plaintiff to district No. 2 in Clarendon, and to abolish district No. 7, was " To see if said town will accept and adopt the report of the committee to alter school districts."   This confined the action of the town in the alteration of school districts to such as the committee should recommend in their report.   It would be an unwarranted construction, and in violation of all rules, to sever the last four words, " to alter school districts," from what precedes in the sentence, and hold that the alteration of school districts in any and every possible way was before the town for action.   The town had for years been accustomed to appoint a committee to hear such parties as desired alterations in school district lines, and to report to the town in reference thereto.   At the time of posting the notification the town had such a committee, and a report was expected from them to the town at its March meeting, 1864.   The article in the notification was framed with reference to making such alterations as the committee might have considered and should recommend, and authorized the consideration and making of such alterations, and no others.   The action of the town in setting the plaintiff and others to district No. 2, and in abolishing district No. 7, was not in accordance with or included in the report of the committee, and was wholly unauthorized and void.   The plaintiff did not, therefore, become a resident of school district No. 2 by the vote of the town.   Neither do we think there has been such an acquiescence in this unauthorized action of the town by the plaintiff, or by the town, as has made him a resident of that district.   He protested against the action of the town.   He has not patronized the schools of district No. 2, nor attended its meetings except to resist a vote to build a schoolhouse.   He has paid taxes for some years " when *required* to do so by the collectors of the district."   The payment of taxes under compulsion is not a very forcible act of acquiescence.   He might, and probably did, think it cheaper to pay the taxes than to engage in a suit with the district.   Neither is there any such subsequent action on the part of the town as brings the case within

52

*Sawyer* v. *Williams*, 25 Vt., 311. The only act relied on is, that the article in the notification of the meeting to set the plaintiff to district No. 3 in Wallingford, describes him as of district No. 2. This is altogether too slight an act of the town, if such it can be called, to work the abolition of district No. 7, or a removal of the plaintiff from district No. 7 to No. 2. As the plaintiff was not an inhabitant of district No. 2, he was not taxable there. This view obviates the necessity of considering whether the defendant's distraint was excessive.

Judgment of the county court is affirmed.